**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re Lihua International, Inc. Securities Litigation** | No. 14-CV-5037-RA-RLE<br><br>CLASS ACTION |

**CORRECTED MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**THE ROSEN LAW FIRM, P.A.**
 Laurence M. Rosen, Esq. (SBN 219683)
275 Madison Ave, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com


*Lead Counsel and Proposed Class Counsel*

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...................................................................................- 1 -

II.   OVERVIEW OF THE LITIGATION ........................................................................- 3 -

  A.   Procedural History of The Litigation ..................................................................- 3 -

  B.   Settlement Discussions .......................................................................................- 9 -

  C.   Summary of Key Terms of the Proposed Settlement.........................................- 10 -

    1.   *Relief to Class Members* ................................................................................- 10 -

    2.   *Class Notice and Settlement Administration* ...............................................- 10 -

      a)   Notice.........................................................................................................- 10 -

      b)   Administration ...........................................................................................- 11 -

      c)   Costs of Notice and Administration ..........................................................- 11 -

    3.   *Opt-Out and Exclusionary Provisions* .........................................................- 11 -

    4.   *Release Provisions* .......................................................................................- 12 -

    5.   *Reimbursement Award and Attorneys' Fees and Expenses* .........................- 12 -

      a)   Reimbursement Award ..............................................................................- 12 -

      b)   Attorneys' Fees and Expenses ..................................................................- 13 -

      c)   No Admission of Liability..........................................................................- 13 -

III.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
     APPROPRIATE........................................................................................................- 13 -

  A.   The Settlement Should Be Preliminarily Approved Because It Falls Within The
      Range Of Reasonableness ..................................................................................- 13 -

  B.   The Settlement Negotiated By The Settling Parties Enjoys A Presumption Of
      Fairness ...............................................................................................................- 15 -

  C.   The Settlement Benefit Falls Within The Range Of Possible Approval .......................- 16 -

    1.   *The Complexity, Expense and Likely Duration of the Litigation* ................- 17 -

    2.   *Stage of Proceedings and Amount of Discovery Completed*.......................- 19 -

    3.   *The Risks of Establishing Liability & Damages* .........................................- 20 -

    4.   *The Risks of Maintaining the Class Action Through Trial*..........................- 20 -

    5.   *Reasonableness of the Settlement Fund* ......................................................- 21 -

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
     SETTLEMENT PURPOSES ...................................................................................- 22 -

  A.   The Proposed Settlement Class Meets The Requirements Of Rule 23(a) And 23(b)(3)
      and Nationwide Class Certification is Appropriate Here. ..............................................- 22 -

V.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
      CLASS NOTICE .............................................................................................- 26 -

   A.   Notice by Direct Mail and Publication Is Appropriate ..................................- 26 -

   B.   The Proposed Form of Notice Adequately Informs Settlement Class Members of
        Their Rights in This Litigation ....................................................................- 27 -

VI.   PROPOSED SCHEDULE OF EVENTS .....................................................- 29 -

VII.  CONCLUSION...........................................................................................- 32 -

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................ - 22 -, - 24 -

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ................................................................................................ - 14 -

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ................................................................................. - 23 -

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ........................................................ - 14 -, - 17 -, - 22 -

*Clark v. Ecolab Inc.*,
  No. 04CIV.4488PAC, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ................................. - 15 -

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) .................................................................................. - 25 -

*Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................ - 23 -

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .................................................................................. - 16 -

*Diaz v. E. Locating Serv. Inc.*,
  No. 1:10-CV-04082-JCF, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ........................... - 15 -

*George v. China Auto. Sys., Inc.*,
  No. 11 CIV. 7533 KBF, 2013 WL 3357170 (S.D.N.Y. July 3, 2013) ................................ - 21 -

*Haddock v. Nationwide Fin. Servs., Inc.*,
  262 F.R.D. 97 (D. Conn. 2009) ............................................................................. - 23 -

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014) ....................................................................................... - 18 -

*Holden v. Burlington N., Inc.*,
  665 F. Supp. 1398 (D. Minn. 1987) ....................................................................... - 22 -

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
  No. 11 CIV. 4209 KBF, 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013).................................- 21 -

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...............................................................................- 20 -

*In re Crazy Eddie Sec. Litig.*,
  824 F. Supp. 320 (E.D.N.Y. 1993)...........................................................................- 3 -, - 22 -

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...............................- 14 -

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009).................................................................................................- 24 -

*In re Genta Sec. Litig.*,
  No. CIV. A. 04-2123 JAG, 2008 WL 2229843 (D.N.J. May 28, 2008)..............................- 19 -

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007)...........................................................................................- 15 -

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................- 26 -

*In re Oxford Health Plans, Inc.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................................................- 24 -

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) .......................................................................- 3 -, - 22 -

*In re Salomon Analyst Metromedia Litig.*,
  544 F.3d 474 (2d Cir. 2008)...............................................................................................- 25 -

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
  No. 3:09CV1293 VLB, 2012 WL 3589610 (D. Conn. Aug. 20, 2012)...............................- 20 -

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001)..........................................................................................- 27 -

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)...............................................................................................- 23 -

*Menkes v. Stolt-Nielsen S.A.*,
 270 F.R.D. 80 (D. Conn. 2010) ................................................................ - 23 -, - 25 -

*Mullane v. Cent. Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950) ............................................................................................ - 26 -

*Palacio v. E*TRADE Fin. Corp.*,
 No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419 (S.D.N.Y. June 22, 2012) ............ - 13 -, - 15 -

*Soberal-Perez v. Heckler*,
 717 F.2d 36 (2d Cir. 1983) .................................................................................. - 26 -

*Spann v. AOL Time Warner Inc.*,
 No. 02 CIV. 8238DLC, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ................................. 13 -

*Thompson v. Metro. Life Ins. Co.*,
 216 F.R.D. 55 (S.D.N.Y. 2003) ........................................................................... 17 -

*Torres v. Gristede's Operating Corp.*,
 Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892
 (S.D.N.Y. Dec. 21, 2010) ................................................................................... - 15 -

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ........................................................... - 13 -, - 14 -, - 15 -

*Weinberger v. Kendrick*,
 698 F.2d 61 (2d Cir. 1982) .................................................................................. - 22 -

*Wright v. Stern*,
 553 F. Supp. 2d 337 (S.D.N.Y. 2008) .............................................................. 14 -

**Statutes**

15 U.S.C. § 78 ............................................................................................ - 23 -

15 U.S.C. § 78u-4(a)(7) ................................................................................. - 28 -

15 U.S.C. § 78u-4(b)(3)(B) ........................................................................... - 19 -

**Rules**

Fed. R. Civ. P. 23 ........................................................... - 2 -, - 23 -, - 24 -

Fed. R. Civ. P. 23(a)(2) ............................................................................... - 23 -

Fed. R. Civ. P. 23(b)(1)...............................................................................................- 23 -

Fed. R. Civ. P. 23(b)(3)(D) ........................................................................................- 23 -

Fed. R. Civ. P. 23(c)(2) ..............................................................................................- 27 -

Fed. R. Civ. P. 23(e) ..................................................................................................- 14 -

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................- 24 -

## I.     **PRELIMINARY STATEMENT**

Lead Plaintiff James Holtz ("Plaintiff") on behalf of himself and the putative securities

class (collectively, "Securities Plaintiffs") respectfully submits this memorandum in support of

Lead Plaintiff's Motion seeking: (i) Preliminary Approval of the Proposed Settlement (the

"Settlement"); (ii) conditional certification of the Settlement Class; (iii) approval of the Notice

to the Settlement Class; and (iv) a date for a Settlement Hearing and deadlines for the mailing

and publication of the Notice, the filing of Settlement Class Member objections, the filing of

Settlement Class Member opt-out notices, the filing of Plaintiff's motion for Final Approval of

the Settlement, and the filing of Lead Counsel's application for attorneys' fees and expenses.

Plaintiff seeks preliminary approval of a settlement with Defendants Lihua

International, Inc. ("Lihua"), Robert C. Bruce, Daphne Yan Huang, Siu Ki "Kelvin" Lau, and

Jonathan P. Serbin, (the "Represented Defendants") (collectively with "Securities Plaintiffs,"

the "Settling Parties"). The Settling Parties have reached a proposed settlement of this securities

class action ("Proposed Settlement") in which the Defendants will pay a total of $2,865,000

(Two Million Eight Hundred and Sixty-Five Thousand Dollars) to resolve Class Members'

claims.[1]  The $2.865 million settlement consideration shall be deposited into an escrow account

established by Lead Plaintiff's Counsel within fifteen (15) business days after the Court issues

the order preliminarily approving the settlement and establishing notice procedures

("Preliminary Approval Order"). A copy of the Stipulation of Settlement dated March 22, 2017

(the "Stipulation"), extensively negotiated among the Settling Parties, is being filed

simultaneously herewith.[2]

---

[1] $1.2 million of the settlement consideration is a payment from settlement of the Derivative Action, captioned *In re Lihua International, Inc. S'holder Deriv. Action,* 14-cv-03543-RA-RLE (S.D.N.Y.).

[2] Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Stipulation.

The Proposed Settlement is an excellent result for the Class.  The Proposed Settlement was reached after almost a year and a half of aggressive litigation, during which time Plaintiff conducted extensive investigation in the People's Republic of China ("PRC") and filed two amended complaints.  The settlement was reached only after substantial settlement discussions between the Settling Parties, including a full-day mediation under the auspices of the nationally recognized mediators, Hon. Daniel Weinstein and Elisabeth Hasse, Esq.

The Proposed Settlement was the result of extensive arm's-length negotiations conducted by experienced counsel, informed through analysis of the facts underlying this litigation, and represents a substantial recovery of the Class's estimated damages.  Plaintiff submits that, while the merits of the case are strong, in light of Defendants' potential defenses, the maximum amount of potentially recoverable damages, the risks of prosecuting this litigation through trial, the difficulties of enforcing any potential judgment in the PRC, and the very significant recovery achieved, the Proposed Settlement is not only well within the range of reasonableness, it is an excellent result and is in the best interests of the Class.  The Proposed Settlement warrants preliminary approval by this Court so that a Settlement Hearing can be scheduled to consider final approval of the Proposed Settlement and notice of the Proposed Settlement and hearing can be distributed to members of the Class.

By this motion, which is uncontested by Defendants, Plaintiff seeks to begin the settlement approval process, through an order:

- Granting preliminary approval of the Stipulation of Settlement (the "Stipulation"), which the Court should order because the USD$2.865 million "falls within the range of possible approval";

- Certifying a Class for settlement purposes only, appointing Lead Plaintiff as the Class Representative, and appointing The Rosen Law Firm ("Rosen") as Class Counsel, which the Court should order because the prerequisites of Fed. R. Civ. P. 23 are met;

- Approving the Settling Parties' proposed form and method of giving Class

Members notice of the action and proposed Settlement, which the Court should order because the Notice and the plan to provide notice meet all applicable requirements;

- Setting a hearing on whether the Court should grant final approval of the Settlement, dismiss claims against the Settling Defendants, approve the release of claims against all Released Parties, enter judgment, award attorneys' fees and expenses to Lead Counsel, and approve an Award to Lead Plaintiff.

The Settlement is an excellent result for Settlement Class Members. Lihua is in insolvency, and it has undergone an informal liquidation. It has lost nearly all of its assets, and those that may remain are located wholly outside the U.S., which raises collectability concerns. Lihua is exhausting the substantial majority of its available insurance to settle this case. Lead Plaintiff estimates that the Settlement returns just over eleven percent (11%) of the likely recoverable damages suffered by the Class – well above the median settlement for similar securities class actions. *See* Cornerstone Research, Securities Class Action Settlements 2015 Review and Analysis, at 8-9 ("Cornerstone") (noting that in 2015, securities settlements overall returned a median of 1.8% of damages); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (approving settlement that was 10% of estimated maximum recovery).

## II.   OVERVIEW OF THE LITIGATION

### A.   Procedural History of the Litigation

This Action was filed as a class action on behalf of purchasers of Lihua International Inc. ("Lihua" or the "Company) common shares between August 9, 2012 and April 30, 2014, inclusive (the "Class Period").  By Order dated August 11, 2014, the Court appointed James

Holtz to serve as Lead Plaintiff, and his choice of counsel The Rosen Law Firm, P.A. was approved as Lead Counsel.

On February 6, 2015, Plaintiff filed the Second Amended Class Action Complaint alleging: (Count 1) violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") against the Defendants; and (Count 2) violation of Section 20(a) of the Exchange Act against the Individual Defendants.

This is an unusually straightforward case of fraud. Defendant Lihua International Inc. ("Lihua" or the "Company") manufactured, marketed, and distributed refined copper products through its two wholly-owned subsidiaries incorporated in the People's Republic of China: Danyang Lihua Electron Co., Ltd., ("Lihua Electron") and Jiangsu Lihua Copper Industry Co., Ltd. ("Lihua Copper") (together the "PRC Subsidiaries"). ¶11.[3] Its CEO, Jianhua Zhu ("Zhu") and its Chief Operating Officer, Yaying Wang ("Wang"), were husband and wife. ¶¶13, 15.

For years, Lihua told the investing public that it had no debt, and that its operations were growing. In reality, Lihua's operations were collapsing and it had enormous debt. Lihua concealed this from investors until its CEO, Jianhua Zhu, attempted to steal the company's inventory and destroyed the company's documents. Eventually Lihua did admit that it had massive debts that were concealed from the investing public.

Lihua went public on May 13, 2009 and disclosed that on December 31, 2008, it had $6 million in bank debt, which it used to fund capital expenditures. ¶24. In October 2009, Lihua hired Defendant Daphne Yan Huang ("Huang") as its Executive Vice President of Corporate Finance. She had a background as a debt expert, and worked on structuring debt as Vice President in the Capital Markets Group of GE Capital Markets, Inc., and prior to that as Senior

---

[3] Unless otherwise specified, all references to "¶_" refer to the Corrected Second Amended Complaint.

Associate in the Debt Capital Markets Group of Fleet Securities, Inc. *Id.*

In each and every quarterly and annual financial statement throughout the class period, Lihua claimed to have no debt. ¶¶74, 80, 87, 93, 103, 113, 121. These statements (the "Debt Misstatements") were false for several reasons. Lihua's claims to have no debt in the 10-K for 2013 and the 10-Q for the third Quarter of 2013 were false because the Complaint alleges that on September 17, 2013 Lihua Copper received from Everbright a loan and line of credit for 50 million RMB ($8 million). ¶38. Lihua concedes that its 10-K for 2013 was false for failing to report the Everbright loan. Though Lihua did not concede it, this also renders the 10-Q for the third quarter of 2013 false, because the Everbright loan was taken out during the third quarter, on September 17, 2013. ¶38.

Lihua admitted, in an 8-K filed on August 29, 2014, that it had undisclosed debt throughout 2013 and withdrew its 2013 financial statements. In its 10-K for fiscal year 2011, which Huang signed, the Company announced that it had paid off all of its bank debt. ¶27. However, Lihua did not really eliminate its debt – it massively increased it. *Id.* As Lihua's business declined throughout the Class Period, obtaining and concealing debt became vital to the continued existence of Lihua. *Id.* On October 24, 2012 Lihua took out a new 10 million RMB loan from China Construction Bank that will come due on October 23, 2015. *Id.* Again, Lihua never disclosed this debt to its investors. *Id.* Lihua's debt peaked at over $325 million USD and on March 28, 2014 was over $195 million USD. *Id.* Lihua also began committing tax fraud in October of 2012. ¶30. Defendant Wang and Lihua Copper have been indicted by the Yingkou Zhanqian District People's Procurate for issuing false VAT[4] invoices. *Id.*

_____

[4] VAT, or value added tax, is a sales tax that charges businesses the difference between what the seller paid for raw materials, and the price the seller received for a finished product. *Id.*

To further its fraud, Lihua Copper had suppliers inflate invoices for raw materials and thus paid excessive prices for goods, reducing their VAT. *Id.* Then the excess price Lihua paid was remitted back to a debit card controlled by Wang. *Id*. This caused Lihua to understate its tax liabilities on its balance sheet. By 2013, Lihua's production was collapsing. ¶31. Lihua struggled financially because its plants were operating at 20% of capacity and the burden of paying for a 150 square kilometer facility that was mostly empty space drove it to greater debt. *Id.* Like its debt, Lihua concealed this decline in output and revenue from investors, omitting it from their periodic reports and financial statements. *Id.* Lihua also made bad futures and stocks investments, and bad industrial investments such as a Xinjiang tungsten mine and a Nanjing power plant, which losses were also concealed from investors. *Id.*

By July of 2013, Lihua's cash shortage began to drive business decisions. ¶33. By September, although Lihua claimed that it had almost $190 million in cash reserves, Lihua's true financial position was so weak that, in order to obtain a mere $8 million loan and line of credit on September 17, 2013, it needed both to post scrap copper as security and to obtain outside guarantors. ¶37. By the end of January 2014, Lihua stopped producing any product. ¶39. Rather than admit that Lihua was bankrupt, Zhu and Wang decided instead to conceal the collateral from creditors, and to destroy the evidence of Defendants' fraud. *Id.* In March 2014, Zhu asked employees to transport scrap copper off site to a rented warehouse in Wuxi, a city that is a two hour drive from Danyang. ¶43. A bank supervisor was onsite at Lihua's facilities to oversee the storage of the copper. *Id.* Associates of Zhu got the supervisor drunk, and then moved the inventory. *Id.* On the day of the inventory theft, CI 3 observed Zhu and his wife burning documents in the offices and deleting "all files from company computers". ¶44. Zhu rarely used

---

Therefore, by exaggerating the amount that was paid for raw materials, a company can reduce its VAT charges. *Id.*

digital documents and most files were in hard copy only, so the information cannot be replaced. *Id.* Everbright reported the theft to the police, and also brought the above referenced civil action *Everbright v. Lihua*. ¶45. The People's Daily Report broke the news on March 28 that Zhu was under investigation, and according to the Danyang Daily Report, on March 28 Lihua also publicly announced within China that its "funding chain was broken." *Id.*

None of this was revealed to investors until the website geoinvesting.com posted a brief summary of the People's Daily Report on April 30, 2014. ¶47. *Id.* On May 4, Zhu and Wang sent letters to the board of directors that were received on May 6, announcing their resignations, for "personal reasons." ¶48. A short time later, Zhu transferred his controlling share of Lihua stock through a private sale to Wuxi Industry Development Group Co., Ltd. ("Wuxi Industry") and Jiangsu Huihong International Group ("JHIG"), state-owned companies. ¶49.

By July, Lihua's management regained control of Lihua's offices. ¶54. However, in early July, someone with an administrative login deleted company emails from a computer located in Danyang City. *Id.* After regaining control of Lihua's facilities in late July of 2014, Lihua's management learned that certain of Lihua's financial records were missing. ¶55. Lihua failed to disclose this fact until Lihua's auditor, Crowe Horwath ("Crowe"), resigned in a letter received by the SEC on August 28, 2014. *Id.* Only then did it acknowledge that its 2013 financial statements could not be relied upon. *Id.* Lihua retained Asia Pacific CPA Group ("AP") on July 25, 2014 to report on the PRC Subsidiaries' financial condition as of June 30, 2014. ¶56.

Lihua has not disclosed any legal action that it has taken against Zhu. ¶63. Zhu remains the legal representative of Lihua's subsidiaries. *Id.*

Zhu and Huang signed Sarbanes Oxley Certifications with each 10-K and 10-Q throughout the Class Period. Each one included, among other statements, a statement that Zhu

and Huang had each "Designed such disclosure controls and procedures … to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared" and "disclosed … to the registrant's auditors and the audit committee of the registrant's board of directors … (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting." ¶¶76, 82, 89, 97, 107, 117, 125. The Complaint alleges that these SOX certifications were deficient for failure to disclose Wang's tax fraud.

This action was filed on May 1, 2014. An Amended Complaint was filed on October 23, 2014. Dkt. No. 64. Defendants moved to dismiss the Amended Complaint on December 16, 2014. Dkt. No. 67. On February 6, 2015, Plaintiff filed the Corrected Second Amended Complaint. Dkt. No. 77. Defendants moved to dismiss on March 16, 2015. Dkt. No. 80. The Court granted Defendants' motion in part and denied it in part, dismissing Defendants Huang, Bruce, Serbin, and Lau, but upholding the allegations against Lihua. Because Defendants Zhu and Wang have not appeared, no ruling has been made as to them. The District Court found that the Complaint successfully pled that Lihua 1) failed to disclose the existence of debts throughout the class period, 2) failed to disclose production declines, and 3) failed to disclose Wang's tax fraud.

Defendants have not contested that the revelation of Lihua's fraud caused losses to the class. On April 30, 2014, the website GeoInvesting revealed that Lihua racked up massive debts that it concealed from the investing public. ¶130. These facts caused Lihua's stock price to decline from $4.33 to $2.08, when NASDAQ halted trading. ¶131. When trading resumed, the price of Lihua's stock plummeted to $0.30. ¶132. Lihua has not disputed the fact that the

revelation of its fraud caused the price of Lihua's stock to decline, nor can they credibly do so.

Immediately upon disclosure of the fraud, Lihua's share price declined from $4.33 to $2.08, when NASDAQ halted trading.  ¶131.  When trading resumed, the price of Lihua's stock immediately plummeted to $0.30. ¶132.   Based on a conservative estimate of the number of damaged shares, Plaintiff's damages expert estimates aggregate damages to be at least $24 million.

Subsequently, the Settling Parties agreed to mediate the dispute before the Hon. Daniel Weinstein, an experienced and nationally recognized mediator. After a full-day mediation on January 26, 2017, a settlement was reached. The Settlement is comprised of a $2,865,000 payment from the Defendants' insurer.

Thus, Plaintiff believes that the Proposed Settlement, which recovers approximately 8% of the Class' estimated $36 million of maximum "plaintiff-style" damages is an excellent result given the risks inherent in this litigation. According to a study by Cornerstone Research, between 2006 and 2014, securities class actions with damages less than $50 million settled for a median recovery of 11.4% of total damages. Laarni Bulan, Ellen Ryan, and Laura E. Simmons, *Securities Class Action Settlements: 2015 Review and Analysis*, Cornerstone Research, at 9.[5]

### B.    Settlement Discussions

Counsel for Plaintiff and Defendants engaged in extensive efforts and negotiations to resolve this Action.  The Settling Parties prepared and exchanged extensive mediation statements outlining their settlement positions, and the Settling Parties engaged in an all-day mediation session before respected and experienced mediators, at which Lihua's insurance carriers were also present. At the August 9, 2016 mediation session before the Hon. Daniel Weinstein, the

---

[5]   Available   at   http://securities.stanford.edu/research-reports/1996-2015/Settlements-Through-12-2015-Review.pdf

Settling Parties reached an agreement in principle, which was formalized on February 25, 2017. The Settling Parties thereafter signed the Stipulation on March 22, 2017.

### C.    Summary of Key Terms of the Proposed Settlement

#### 1.    *Relief to Class Members*

In full and final settlement of all claims asserted or referred to in this Action, and all claims that have been or could have been asserted by Settlement Class Members or Lead Plaintiff against any of the Defendants in the Action, the Settling Defendants agree to pay two million eight hundred and sixty-five thousand U.S. dollars (USD$2,865,000.00) in cash (the "Settlement Consideration").

#### 2.    *Class Notice and Settlement Administration*

##### a)    Notice

Within twenty-eight (28) calendar days of Preliminary Approval, the third party Settlement Administrator, Strategic Claims Services, will provide individual notice via mail, substantially in the form attached to the Stipulation as Exhibit A-1 (the "Notice"), to each Class Member identified by records maintained by Lihua or its transfer agent. Strategic Claims Services will send individual notice to all persons identified by banks, brokerage firms, or other nominees, as having purchased Lihua stock during the Class Period. At the same time that direct mail notice is first sent, the Settlement Administrator shall publish notice of the Settlement, substantially in the form attached to the Stipulation as Exhibit A-2, on a national Internet business newswire and the *Investors' Business Daily*.

The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Plaintiff to conclude that the Settlement is fair and adequate, the maximum attorneys' fees award and expense reimbursement that may be sought, the procedure for objecting to and opting out of the Settlement, the proposed Plan of Allocation and the date and

place of the Settlement Hearing.  This notice program will fairly apprise Class Members of the Settlement and their options with respect thereto and fully satisfies due process requirements.

b)     Administration

Strategic Claims Services will administer distribution of the Net Settlement Fund pursuant to the Stipulation.  Within fifteen (15) business days after the Court enters the attached Preliminary Approval Order (Exhibit A), the Settling Defendants shall cause Defendants' Insurance Carriers to pay by wire transfer the Settlement Consideration to an interest-bearing escrow account in a federally-chartered bank designated by Lead Counsel (the "Escrow Account") to be controlled by said bank as the Escrow Agent for the benefit of the Settlement Class, with all interest to accrue for the benefit of the Settlement Class.

Once the Settlement becomes final following entry of the Final Approval Order, no monies shall revert to the Settling Defendant or Defendants' Insurance Carrier.

c)     Costs of Notice and Administration

Upon deposit in the Escrow Account of the Settlement Consideration, the Escrow Agent may transfer one hundred thousand U.S. dollars (USD $100,000.00) from the Escrow Account to an interest bearing account to be maintained by the Settlement Administrator (the "Settlement Administration Account") to pay reasonable and necessary notice and administration costs.

3.     *Opt-Out and Exclusionary Provisions*

Any Class Member who wishes to object to the fairness of the Stipulation must, by the Opt-Out/Objection Deadline, file any such objection with the Court, and provide copies of the objection to Lead Counsel, Defendants' Counsel, and the Court.   Any Class Member who does not file a timely written objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

Any Class Member who wishes to be excluded as a Class Member may submit a written exclusion request, postmarked no later than the Opt-Out/Objection Deadline, to Lead Counsel, Defendants' Counsel, and the Settlement Administrator.

4.     *Release Provisions*

Upon the Effective Date noted in the Stipulation, Lead Plaintiff and each Settlement Class Member who does not timely exclude himself/herself from the Settlement Class, including any other person acting on his/her behalf or for his/her benefit, shall be deemed to have released, waived, and discharged the Released Parties from the released claims as defined in the Stipulation, and expressly waived and relinquished the Released Claims, including any Unknown Claims.

5.     *Reimbursement Award and Attorneys' Fees and Expenses*

a)     Reimbursement Award

The Notice informs the Class that Lead Plaintiff shall seek an incentive award not to exceed $25,000 for the Lead Plaintiff.  The Settling Defendants do not object to such request. This payment shall be compensation and consideration for the time devoted by Lead Plaintiff in prosecuting this Action and procuring a benefit for the Settlement Class.  Among other things, Lead Plaintiff reviewed drafts of each of the complaints prior to filing, responded to Lihua's document requests, negotiated their document requests against Defendants and reviewed productions, and provided oversight regarding the mediation and settlement process, authorized entry into the Settlement, and reviewed drafts of the Settlement papers before they were filed with the Court.

b)      Attorneys' Fees and Expenses

For their services rendered on behalf of the Settlement Class, Class Counsel intends to seek an attorneys' fee award not to exceed $555,810, or 19.4% of the Settlement Consideration, as well as the reimbursement of reasonable expenses not to exceed $100,000. The Settling Defendants do not object to a request for this amount of attorneys' fees and expenses.  These figures were finalized in the Stipulation after all other material terms of the Stipulation were agreed upon by the Settling Parties.

c)      No Admission of Liability

By entering into the Stipulation, the Settling Defendants are not admitting liability.  To the contrary, the Settling Defendants and all former Defendants deny that they violated the Exchange Act and deny that Plaintiff or the putative Class are entitled to any relief.

III.   **PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE**

A.   **The Settlement Should Be Preliminarily Approved Because It Falls Within The Range Of Reasonableness**

The law favors settlement, particularly in class actions and other complex cases because such cases use up the Settling Parties' resources and substantial judicial resources, and litigated resolution is usually significantly delayed – here, for instance, the Class Period at issue began four and one-half years ago and ended over two and one-half years ago. *Palacio v. E*TRADE Fin. Corp.*, No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419, at *2 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner Inc.*, No. 02 CIV. 8238DLC, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005)("[P]ublic policy favors settlement, especially in the case of class actions"); *Newberg on Class Actions* (*Fourth*) (2002) § 11.41 ("The compromise of complex litigation is

encouraged by the courts and favored by public policy.").  Due to this presumption in favor of settlement, courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement" "[a]bsent fraud or collusion."  *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981).

Where, as here, the Settling Parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval.  *See* Fed. R. Civ. P. 23(e); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008). The typical process for approval of class action settlements by federal courts is described in the *Manual For Complex Litigation (Fourth)* §§ 21.632-.634 (2004).  The steps are:

1.  Preliminary approval of the proposed settlement at an informal hearing;

2.  Dissemination of mailed and/or published notice of the settlement and fairness hearing to all affected class members; and

3.  A formal fairness hearing, or final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

In the Second Circuit, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc.*, 396 F.3d at 116. To determine substantive fairness, courts decide whether a settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Plaintiff ask that the Court take the first step in the settlement approval process and grant preliminary approval of the settlement.

**B.      The Settlement Negotiated By The Settling Parties Enjoys A Presumption Of Fairness**

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)). Accordingly, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, No. 04CIV.4488PAC, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). Courts also give weight to the parties' judgment that the settlement is fair and reasonable. *See Palacio*, *2012 WL 2384419*, at *2 (*citing Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010)); *Diaz v. E. Locating Serv. Inc.*, No. 1:10-CV-04082-JCF, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

The settlement was reached through arm's-length negotiation over an extended period of time, which included one all-day mediation before two respected and experienced mediators: The Hon. Daniel Weinstein (ret.) and Elizabeth Hasse, Esq. The mediation followed

- 15 -

commencement of discovery and Lead Plaintiff's obtaining additional documents from Lihua and third parties.  In advance of the mediation, the Settling Parties exchanged substantive mediation statements and exhibits.  Lead Counsel and attorneys for Defendants attended the mediation, joined by representatives from both of Defendants' Insurance Carriers.  The Settling Parties continued these extensive arms-length negotiations with each other for several months, with the assistance of the Mediators, before finally coming to agreement in the Stipulation and settlement of the Derivative Action. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] . . .mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

In negotiating the Stipulation, Lead Plaintiff had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case.  *See* Rosen Law Firm Resume attached as Appendix 1.  In Class Counsel's view, the Settlement provides substantial benefits to the Settlement Class, especially when considering the expenses, burdens, procedural and legal obstacles involved in seeking party and third-party discovery in two countries (U.S. and China); the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings; and the potential difficulties in collecting a judgment against Defendants whose assets are either all or principally outside the U.S.

For all these reasons, the Settlement was the product of a thorough, arm's length process, and as such, it enjoys a presumption of fairness.

### C.    The Settlement Benefit Falls Within The Range Of Possible Approval

In determining whether a settlement is fair, reasonable, and adequate, the Court considers whether to approve the settlement under the factors articulated in  *Grinnell*: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3)

the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the particular circumstances. *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

At this preliminary stage, however, the Court need not determine whether the settlement should be approved. If the Court finds that the settlement is "within the range of possible approval" that might be approved under *Grinnell*, it should then order that the Class be notified of the Settlement and given an opportunity to be heard and that the Settlement Hearing be held. *See Manual* at § 40.42 (model preliminary approval order). Here, the Settlement substantially satisfies the test announced by *Grinnell*. Therefore, the Court should grant preliminary approval.

1.    *The Complexity, Expense and Likely Duration of the Litigation*

The Settlement provides the Class with substantial relief, without the delay and expense of trial and post-trial proceedings. Lead Plaintiff anticipated the need to approach the Court about potential extensions of the schedule due to a variety of factors already apparent in discovery, including the need for the Settling Parties to work through complex predictive coding, search term, and document format issues regarding electronic discovery; and the need for the Court to assist the Settling Parties in resolving discovery disputes which, despite extensive meet and confer efforts, they had been unable to resolve.

Due to the inherent complexity of securities litigation, and particularly the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995's ("PSLRA") amendments to the Exchange Act, as well as supervening case law developments, including the Supreme Court's recent decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014), a securities class action is an inherently complex and lengthy litigation to prosecute. Necessary discovery in this action was complex and geographically challenging. Relevant evidence was in China (Lihua and its subsidiaries, Lihua's customers, Chinese government entities with oversight of Lihua's operations, the Chinese SAIC offices). To continue the process in China would have been far more onerous, costly, and time-consuming.

If the Settling Parties did not agree to settle this case, they would have faced further litigation – particularly a trial – that would be expensive and risky. Among other things, the jury would have had to determine whether Chinese law required Lihua to report on its debts. The jury would then have had to determine whether this evidence was enough to show that Defendants overstated its financial situation in its U.S. filings with *scienter*. Then, the jury would have had to decide a third battle of the experts, determining whether Lihua's stock traded on an efficient market, entitling Plaintiff to a presumption of reliance, but permitting Defendants' rebuttal evidence on price impact under *Halliburton*. The jury would then have had to decide other expert-dependent issues – what was the artificial inflation of Lihua's stock and how much of the price declines were attributable to what Plaintiff alleges were the disclosures of information correcting Defendants' false statements. Thus, any recovery would both be much more uncertain and inevitably be delayed by years, particularly when potential appeals are taken into consideration.

2.      *Stage of Proceedings and Amount of Discovery Completed*

The PSLRA provides that "[i]n any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B).  Thus, the PSLRA "creat[es] a strong presumption that no discovery should take place until a court has affirmatively decided that a complaint does state a claim under the securities laws, by denying a motion to dismiss." *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004). By operation of law, discovery in this Action did not commence until the Court denied Lihua's motion to dismiss and explained its reasoning in March 2016.

The proceedings in this Action were sufficiently advanced to provide Plaintiff with a thorough understanding of the strengths and weaknesses of the Class's claims. As described above, Plaintiff conducted a substantial pre-discovery investigation, including extensive discussions with experts and review of materials obtained in discovery, including documents in Chinese obtained from Lihua and third parties. Defendants' motion to dismiss and the Court's order denying it in part gave Plaintiff a thorough understanding of the facts and law at issue. *See, e.g., In re In re Genta Sec. Litig.*, No. CIV. A. 04-2123 JAG, 2008 WL 2229843, at *2 (D.N.J. May 28, 2008) ("The motion to dismiss resolved many of the issues raised in the Amended Complaint, leaving Lead Plaintiffs and Defendants … with a solid understanding of the strengths and weaknesses of their respective positions.").  The mediation session, along with the extensive mediation statements prepared in conjunction therewith, and the further negotiations conducted by the Settling Parties, further illuminated the relative strengths of the Settling Parties' positions.

3.    *The Risks of Establishing Liability & Damages*

The Settling Parties acknowledge that there were substantial risks in prosecuting the case and that further prosecution of the litigation may have yielded limited or no recovery. Although Plaintiff believes the merits of the case are strong, the Defendants' liability under the Securities Act can be difficult to establish due to the availability of various affirmative defenses, such as due diligence, reliance, and negative causation. While the Court denied in part the Defendants' motion to dismiss, Plaintiff may not have been able to obtain admissible evidence to prove his claims – as much of the evidence is located in China or destroyed. Moreover, Plaintiff must prove Defendants' scienter and proving a defendant's scienter to the jury's satisfaction is notoriously difficult and risky. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610, at *6 (D. Conn. Aug. 20, 2012). The Defendants have denied and continue to deny, inter alia, the allegations that Plaintiff or the Class have suffered damages, that the prices of Lihua common stock were artificially inflated by reason of alleged misrepresentations, non-disclosures, or otherwise, or that Plaintiff or the Class were harmed by the conduct alleged. While the Court has found Plaintiff's allegations sufficient to defeat various motions to dismiss, it is far from certain that Plaintiff would have been successful at summary judgment or trial. Ultimately, the creation of a $2.865 million Settlement Fund provides a significant benefit that greatly outweighs the procedural and legal hurdles of proving liability and damages, as well as the risk that continued litigation may not have resulted in any recovery.

4.    *The Risks of Maintaining the Class Action Through Trial*

In deciding Plaintiff's motion for class certification, the Class would face the risk of arguments by Defendants regarding any potential factual dissimilarity of claims asserted by

Plaintiff and putative Settlement Class members. If successful, the defense would mandate individual lawsuits by Settlement Class Members hoping to collect minimal amounts of damages accrued. Moreover, even if a Class were certified over Defendants' objection, it would face multiple risks in proving the class-wide nature of Defendants' securities laws violations at trial.

To be entitled to class certification, Plaintiff must show that common issues predominate over individual issues. But for Defendants' consent to certification of the Settlement Class, Plaintiff would have had to meet his burden by showing that Lihua's stock trades on an efficient market, entitling purchasers to the presumption of reliance on Defendants' materially false statements. Under *Halliburton*, Defendants would have been permitted to rebut the presumption by proving that there was no price impact, which, given the company and short seller statements toward the end of the Class Period, would have been a challenge. While certification of securities class actions remain the norm, the process is by no means automatic. *See, e.g.*, *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11 CIV. 4209 KBF, 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) (denying motion for certification of class of U.S. purchasers of large foreign bank's Global Registered Shares); *George v. China Auto. Sys., Inc.*, No. 11 CIV. 7533 KBF, 2013 WL 3357170 (S.D.N.Y. July 3, 2013) (denying motion for certification of class of purchasers of stock of China-based U.S.-listed company). Thus, without a settlement, the Class risked that certification would not be granted. And, the law governing certification of securities class action has been in constant flux, as evidenced by the *Halliburton* decision and the uncertainty that decision has engendered.

5.    *Reasonableness of the Settlement Fund*

Pursuant to the Settlement Stipulation, Settlement Consideration of $2.865 million is to be paid into the Settlement Fund by Defendants. Lead Plaintiff's consultation with their expert

indicated that maximum class-wide damages were likely $25 million.  By comparison, the Settlement represents an excellent result, returning just over eleven percent (11%) of estimated damages.  As such, the settlement falls well within the range of possible approval. *See, e.g., Rite Aid*, 146 F. Supp. 2d at 715 (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *Eddie*, 824 F. Supp. at 328 (approving settlement that was 10% of estimated maximum recovery); *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) 495 F.2d 448 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")  Further, most, if not all, of Lihua's assets are in China, which presents substantial concerns on the ability to collect on any judgment.  Moreover, the Second Amended Complaint alleges the company is no longer a financially viable operation and is in the process of being liquidated by a Chinese government entity.

## IV.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A.  The Proposed Settlement Class Meets The Requirements Of Rule 23(a) And 23(b)(3) and Nationwide Class Certification is Appropriate Here.

This Circuit has long-established the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).  This Court should determine that the Proposed Class is a proper class for settlement purposes before granting preliminary approval of a class action settlement.  *See Amchem Prods. v. Windsor* 521 U.S. 591, 620 (1997); *Manual*, § 21.632.  To certify a class, the Court must determine whether four threshold requirements of Federal Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action

must be maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3). *Id.* at 614. However, in certifying the Class, this Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; s*ee also* Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3). It is appropriate to settle the claims of all Settlement Class Members in one action as the claims are all subject to the terms of a single federal statute, 15 U.S.C. § 78, *et seq*.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a)(1). "Joinder is generally presumed to be impracticable when a putative class exceeds 40 members." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010) (citing *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997)). Impracticable only means that the difficulty or inconvenience of joining all members of the class makes use of the class action appropriate. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). Here, individual joinder is impracticable and the numerosity requirement is clearly satisfied.

The proposed Class also meets the commonality requirement of Rule 23(a). Commonality is generally easily satisfied, as it "is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims." *Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 116 (D. Conn. 2009). The requirement is met "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). "Securities-fraud cases generally meet Rule 23(a)(2)'s commonality requirement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451–452 (S.D.N.Y. 2004). Securities fraud class actions are "essentially course of conduct cases because the nub of plaintiffs' claims is that material information was

withheld from the entire putative class in each action, either by written or oral communication." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (quotation marks omitted).

Plaintiff also meets Rule 23(a)'s typicality requirement. A plaintiff's claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Like all other Settlement Class Members, Plaintiff directly relied on or is entitled to a presumption of reliance on Defendants' alleged false and misleading statements that violated Sections 10(b) and 20(a) of the Exchange Act.   There are no facts concerning Plaintiff that render him atypical as compared to the other Class Members.

Rule 23 (a)'s last requirement is that the class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23 (a) (4). This inquiry focuses "on uncovering 'conflicts of interest between named parties and the class they seek to represent.'" *In re Flag Telecom Holdings*, 574 F.3d at 35 (quoting *Amchem*, 521 U.S. at 625).  Plaintiff adequately represents the Class since he has no individual interests or claims that are antagonistic to the Class and have zealously represented the interests of the Class to date, including by closely monitoring the pleadings and major developments of the litigation, responding to Lihua's discovery requests, and monitoring and authorizing Lead Counsel's mediation and settlement efforts.

Additionally, Rule 23(g) states that the adequacy of Plaintiff's counsel is determined by four factors: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Lead Counsel Rosen has extensive experience and a stellar reputation in class actions and securities litigation. *See* Appendix 1. It has been appointed as lead or co-lead counsel in many complex securities class actions, and has recovered substantial monies for clients and class members.  It has prosecuted numerous such cases to successful resolution on behalf of investors. Lead Counsel will continue to commit adequate resources to ensure that the Class is properly represented in this Action.

Finally, the proposed Class meets the requirements of Rule 23(b)(3). To satisfy predominance, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008). This inquiry "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *Id.*  There are questions of law and fact common to the Class that predominate over any individual questions, specifically whether Defendants' alleged actions, which were centralized and uniform, violated federal securities laws and whether those violations were knowing or reckless.  These common issues predominate over any individual issues.

"Together with predominance, the superiority requirement 'ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Menkes*, 270 F.R.D. at 100 (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)). Class treatment is often deemed superior in "negative value" cases, in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually. *Menkes*, 270 F.R.D. at 100.

A class action is also superior to other methods available for the fair and efficient adjudication of this controversy. Members of the Class are not likely to prosecute, and many do not have an interest or means to prosecute, an individual case against Lihua, a large multi-national corporation, which along with its executives is represented by a top-tier, well-staffed law firm expert in the field of securities litigation.  Additionally, efficiency and economy support resolving the issues in one suit before this Court now.

## V.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A.   Notice by Direct Mail And Publication Is Appropriate

To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "'The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314). "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual* at §§ 21.632, 21.633. In securities class actions, it is customary to provide notice by (a) publishing a summary notice in a major publication, (b) publishing this same summary notice in a press release, (c) mailing long-form notice to all individual shareholders who can be found, and (d) publishing notice on a website. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010).

The proposed Notice, which will be published and also sent to class members by first class mail, is attached as Exhibit A-1 to the Stipulation. The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel to conclude that the Settlement is fair and adequate, the maximum attorneys' fees that may be sought, the procedure to object to the Settlement, and the date and place of the Settlement Hearing. With the Court's approval, the Notice will be mailed to Settlement Class Members identified by Lihua's transfer agent within 21 calendar days of approval, and mailed to shareholders identified in requests to nominees.

Rule 23 and due process do not require receipt of actual notice by all Settlement Class Members; notice should be mailed to the last known addresses of those who can be identified and publication used to notify others. *Newberg* § 8.04; *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 231–232 (S.D. Ill. 2001) (approving mailed notice to last known addresses of a Settlement Class with nearly 18.5 million members).

Plaintiff has attached to the Stipulation a proposed Notice, a proposed Publication Notice to be issued via a press release and publication on Investor's Business Daily, and a Proposed Claim Form as Exhibits A-1, A-2, and A-3, respectively. These should be approved by the Court.

### B.   The Proposed Form of Notice Adequately Informs Settlement Class Members of Their Rights in This Litigation

Pursuant to Rule 23(b)(3), the notice must inform each class member that "the court will exclude anyone from the class if he so requests [by a specified date]; the judgment will include all members who do not request exclusion and any member not requesting exclusion may, if he desires, enter an appearance through counsel." Fed. R. Civ. P. 23(c)(2).

Here, the proposed Notice, Exhibit A-1, clearly and accurately discloses the information material to a Settlement Class Member's decision whether to accept, object to, or opt out of the

Settlement.  The proposed Notice provides information on, *inter alia:* the proposed Settlement Class; the terms and provisions of the Stipulation, including the Settlement Consideration; the relief to the Class and the releases to Defendants that the Settlement will provide; the maximum amount of any award of attorney's fees and reimbursement of expenses to Lead Counsel and of any Award to Lead Plaintiff; the date, time and place of the final approval hearing; and the procedures and deadlines for opting out of the settlement or submitting comments or objections.

The Notice also meets the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7).   The Notice provides:

- a cover page summarizing the information contained in the Notice;

- a statement of the Settlement Class Members' recovery, estimating a gross average recovery of \$.317 per damaged share before deduction of Court-approved fees and expenses and costs of notice and claims administration, while making clear that the Plan of Allocation will cause the actual amount recovered by any specific Class Member to vary greatly across the Class;

- the general terms of the Settlement;

- a statement of the potential outcome of the case including a statement concerning the issues on which the parties disagree;

- a statement of attorney's fees or costs sought, including a summary of this information on the cover page;

- information on how to contact the Claims Administrator and/or Lead Counsel (including names, addresses, telephone numbers, and websites); and

a discussion of the reasons for the Proposed Settlement, including the factors Plaintiff and the Settling Defendants considered in reaching the Proposed Settlement.

Thus, the proposed Notice to be sent to the Class provides all of the information required by the PSLRA.  The Court should approve the proposed form of Notice and direct that notice be given to the Class as proposed by the Settling Parties.

The Settling Parties have carefully drafted the notice provisions of the Proposed Settlement to provide the best notice practicable to the Class and respectfully submit that the proposed notices, the Notice, and the Summary Notice, which are annexed as Exhibits A-1 and A-2 to the Stipulation, are adequate.

Lastly, as part of the preliminary approval of the Proposed Settlement, Lead Plaintiff also respectfully requests the appointment of Strategic Claims Services, an experienced and diligent administrator, as Claims Administrator.  As Claims Administrator, Strategic Claims Services will be responsible for, among other things, mailing the notices to the Class, reviewing claims from Class Members, claims administration, and compiling a distribution schedule to Class Members. This proposed notice procedure takes into account the identity and location of the Class Members and specifies the most practicable method of providing notice to them.  The traditional methods of providing notice proposed in this case are precisely those recognized as reasonably calculated to notify class members of a proposed settlement. *See* § 21.312 Settlement Notice, Manual for Complex Litigation (4th) § 21.312, at 294.

## VI.     PROPOSED SCHEDULE OF EVENTS

The Court's entry of the proposed Preliminary Approval Order would, among other things, (i) certify, for settlement purposes, this action as a class action; and (ii) direct notice of the Proposed Settlement to all members of the Class.   As such, the Preliminary Approval Order sets a proposed schedule for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims and/or objecting to the Proposed Settlement or opting out of the Class.

Lead Plaintiff recommends the schedule set forth below. Defendants agree to the proposed schedule setting the Settlement Hearing to be held at least 100 days after the granting of the Preliminary Approval Order.  The Settling Parties also agree to the schedule for the other dates, as provided for in the proposed Preliminary Approval Order, which was negotiated among the Settling Parties:

| | |
|---|---|
| Notice of Proposed Settlement and Copy of Proof of Claim Mailed to Class Members (Preliminary Approval Order, ¶11) | 28 calendar days after entry of the order preliminarily approving the settlement |
| Summary Notice published (Preliminary Approval Order, ¶ 16) | 10 business days after entry of the order preliminarily approving the settlement |
| Final Approval Hearing (Preliminary Approval Order, ¶ 5) | To be determined by the court, approximately 100 calendar days after entry of the order preliminarily approving the settlement |

| | |
|---|---|
| Deadline for Plaintiff to file papers in support of final approval and application of Lead Counsel for attorneys' fees, reimbursement of expenses, and an Award to Lead Plaintiff, and application for approval of the Plan of Allocation (Preliminary Approval Order, ¶ 25) | At least 21 calendar days before the Final Approval hearing |
| Deadline for Objections to the Settlement, Plan of Allocation, Attorneys' Fees and Lead Plaintiff Award (Preliminary Approval Order, ¶ 22) | 14 calendar days prior to the Final Approval  Hearing |
| Deadline for requesting exclusion from the Settlement,  (Preliminary Approval Order, ¶ 20) | 30 calendar days prior to the Final Approval Hearing |
| Deadline for submitting Proof of Claim forms (Preliminary Approval Order, ¶¶ 18(a)) | No later than 75 calendar days from the date of this Order, unless otherwise ordered by the Court |

**VII.    CONCLUSION**

Plaintiff respectfully requests that the Court enter an Order:  (1) preliminarily approving the Settlement; (2) certifying the Settlement Class; (3) certifying Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel; and (4) setting a date for a Settlement Hearing and deadlines for the mailing and publication of the Notices, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, and the filing of Lead Counsel's application for attorneys' fees and expenses and for an incentive award to Lead Plaintiff.

Dated: March 24, 2017                    Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**
                                        */s/ Laurence Rosen*
                                        Laurence M. Rosen, Esq. (SBN 219683)
                                        275 Madison Ave, 34th Floor
                                        New York, NY 10016
                                        Telephone: (212) 686-1060
                                        Facsimile: (212) 202-3827
                                        Email: lrosen@rosenlegal.com

                                        *Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I, Laurence Rosen, hereby declare under penalty of perjury as follows:

I am attorney with the Rosen Law Firm, P.A., with offices at 275 Madison Ave, 34th Floor, New York, NY 10016. I am over the age of eighteen.

On March 24, 2017, I electronically filed the foregoing **CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on March 24, 2017

/s/ Laurence Rosen

Laurence Rosen